No. 25-5601

United States Court of Appeals
for the Ninth Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ROBERT L. WEST,
*Defendant-Appellant*.

Appeal from the United States District Court
for the District of Oregon
Portland Division
3:25-cr-00118-IM-1
The Honorable Karin J. Immergut

# APPELLANT'S OPENING BRIEF

Kurt David Hermansen
Supervisory Assistant Federal Public Defender
859 Willamette Street, Eugene, Oregon 97401
Kurt_Hermansen@fd.org
(541) 465-6937

Attorney for Defendant-Appellant

# TABLE OF CONTENTS


Page

Table of Contents ........ 2

Table of Authorities ........ 7

Statement of Issues ........ 13

Summary of Argument ........ 14

Jurisdictional Statement ........ 16

Statutory and Regulatory Authority ........ 17

A. 40 U.S.C. § 1315 governs federally owned or occupied property. ........ 17

B. 41 C.F.R. § 102-74.385 — What is the policy concerning conformity with official signs and directions? ........ 17

C. 41 C.F.R. § 102-74.420 — What is the policy concerning photographs for news, advertising or commercial purposes? ........ 18

D. 41 C.F.R. §§ 102-74.365 through 102-74.455 were removed and rescinded effective November 5, 2025, about two months after the notice of appeal was filed in this case. ........ 18

Custody Status and Release Date ........ 19

Standards of Review ........ 19

A. Statutory delegation of executive powers ........ 19

B. Federal Rule of Evidence 404(b) violations ........ 21

C. Insufficient evidence claims ........ 21

Statement of the Case ........ 21

Statement of Facts ........ 23

A. West received citations for video recording inside the hallway of the Social Security

Administration Hearings Office space leased by the General Services Administration. ......... 23

B. Before trial, the magistrate judge erroneously ruled that, under Rule 404(b), the government could use a prior criminal conviction and expired probation condition from an unrelated state case as evidence of West's knowledge that he could not use his cell phone to create a video in federally leased office space. ......... 30

C. The facts at trial were largely undisputed except as to West's mental state and whether his conduct legally satisfied the elements of the two charged regulations. ......... 33

D. The district court findings ......... 37

Argument ......... 42

I. The statute authorizing the GSA to promulgate the charged regulations is an unconstitutional delegation of legislative power by Congress. ......... 42

A. District court ruling ......... 42

B. The Property / Public Lands Clause finds no application here because GSA leased the office space which shows the transient rather than proprietary nature of the federal occupation of the office space. ......... 45

C. Congress exceeded its authority by delegating unintelligibly broad authority to DHS/GSA agencies. ......... 48

D. The separation of powers doctrine protects against the concentration of power within one branch of government by limiting

delegation of legislative authority to executive agencies. .....54

E. The charged regulations are invalid because Congress impermissibly delegated to the executive branch unconstrainted authority to impose criminal penalties. .....60

II. The district court concluded correctly that the magistrate judge erroneously admitted West's 2022 judgment of conviction for failure to appear because that conviction was not relevant to any permissible purpose under Rule 404(b). But the district court erred in finding that wrongful admission harmless where prejudice is presumed. .....66

III. The evidence at trial was insufficient to establish West's guilt beyond a reasonable doubt. .....71

A. The evidence was insufficient to prove that West violated 41 C.F.R. § 102-74.385 by knowingly and willfully failing to follow a lawful directive from Federal Protective Services (FPS) Officer Carpenter (Citation 9088789). .....72

B. The evidence was insufficient to prove that West violated 41 C.F.R. § 102-74.385 by knowingly and willfully failing to comply with a posted sign (Citation 9088788). .....80

C. The evidence was insufficient to prove that West violated 41 C.F.R. § 102-74.420 because there was no evidence that any federal rule prohibited video recording and because West only recorded in areas that he believed were corridors or lobbies (Citation 9088792). .....84

Conclusion .....87

Statement of Related Cases ........................................................ 88
Certificate of Compliance for Briefs ............................................ 89
Addendum .................................................................................. 90
U.S. CONST. art. I, § 1 ............................................................ 90
U.S. CONST. art. IV, § 3, cl. 2 ................................................ 90
40 U.S.C. § 1315. Law enforcement authority of Secretary of Homeland Security for protection of public property ........................................ 90
41 C.F.R. § 102-74.385 What is the policy concerning conformity with official signs and directions? (Repealed Nov. 5, 2025) ...................... 94
41 C.F.R. § 102-74.420(c) 41 C.F.R. § 102-74.420 What is the policy concerning photographs for news, advertising or commercial purposes? (Repealed Nov. 5, 2025). ............................ 95
6 C.F.R. § 139.15 Definitions: "building manager / property manager / facility manager" ......................... 95
6 C.F.R. § 139.15 Definitions: "Federal facility" ................... 95
6 C.F.R. § 139.15 Definitions: "Federal Government" ............................................................ 96
6 C.F.R. § 139.15 Definitions: "federal grounds" .................. 96
6 C.F.R. § 139.15 Definitions: "federal property" ................. 96
6 C.F.R. § 139.15 Definitions: "image recording" ................. 97
6 C.F.R. § 139.15 Definitions: "federal tenant" ..................... 97
6 C.F.R. § 139.15 Definitions: "Protective Security Officer" ................................................................ 97
6 C.F.R. § 139.15 Definitions: "public area" ......................... 98
6 C.F.R. § 139.15 Definitions: "Secretary" ............................ 98
6 C.F.R. § 139.15 Definitions: "secure area" ......................... 98

6 C.F.R. § 139.30 Conformance with Signs and directions (effective Nov. 5, 2025) ................................ 99

6 C.F.R. § 139.65 Photography and recording (effective Feb. 9, 2026) ................................................ 99

# TABLE OF AUTHORITIES

## CASES

**Page**

*A. Schechter Poultry*,
295 U.S. 495 (1935) ........................................................................ 56

*Allstates Refractory Contractors v. Su*,
630 U.S. ----, 144 S. Ct. 2490 (2024) ................................................ 49

*Am. Power & Light Co. v. Sec. & Exch. Comm'n*,
329 U.S. 90 (1946) .......................................................................... 52

*Biden v. Nebraska*,
600 U.S. 477 (2023) ................................................................ 49-50, 50

*Blockburger v. United States*,
284 U.S. 299 (1932) ........................................................................ 80

*Bryan v. United States*,
524 U.S. 184 (1998) ........................................................................ 81

*Camfield v. United States*,
167 U.S. 518 (1897) ........................................................................ 43

*Chadha v. Immigr. & Naturalization Serv.*,
634 F.2d 408 (9th Cir. 1980) ............................................................ 20

*Chevron v. Natural Resources Defense Council*,
467 U.S. 837 (1984) ........................................................................ 53

*Diaz-Quirazco v. Barr*,
931 F.3d 830 (9th Cir. 2019) ............................................................ 19

*E.E.O.C. v. Farmer Bros. Co.*,
31 F.3d 891 (9th Cir. 1994) ........................................................ 69-70

*Elonis v. United States*,
575 U.S. 723 (2015) .................................................................. 82, 87

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ........................................................................ 51

*Government. Touby v. United States*,
500 U.S. 160 (1991) ........................................................ 55, 58, 62, 63

*Gundy v. United States*,
588 U.S. 128 (2019) ............................................... 41, 51, 52, 56, 59

*Gutierrez de Martinez v. Lamagno*,
515 U.S. 417 (1995) ........................................................................ 20

*I.N.S. v. Chadha*,
462 U.S. 919 (1983) ........................................................................ 55

*J.W. Hampton, Jr., & Co. v. United States*,
276 U.S. 394 (1928) ............................................................... 52, 58

*Kaimi v. Hawaii Dep't of Public Safety*,
689 F. App'x 520 (9th Cir. 2017) ..................................................... 69

*United States v. Kittel*, No. 6:19-CR-00240-MK,
2021 WL 3823185 (D. Or. Aug. 26, 2021) ......................................... 79

*Kleppe v. New Mexico*,
426 U.S. 529 (1976) .......................................................... 43, 45, 46

*Learning Resources v. Trump*,
607 U.S. __, 146 S.Ct. 628 (2026) .................................................... 66

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) .......................................................... 20, 53, 54

*Lopez v. Bondi*,
151 F.4th 1196 (9th Cir. 2025) ........................................................ 53

*Lopez v. Garland*,
116 F.4th 1032 (9th Cir. 2024) ........................................................ 19

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) ........................................................... 20

*Marshall Field & Co. v. Clark*
143 U.S. 649 (1892) .......................................................................... 65

*Mistretta v. United States*,
488 U.S. 361 (1989) .................................................. 49, 51, 52, 55, 58

*Nat'l Cable Television Ass'n v. United States*,
415 U.S. 352 (1974) .......................................................................... 56

*Staples v. United States*,
511 U.S. 600 (1994) .......................................................................... 81

*Stark v. Wickard*,
321 U.S. 288 (1944) .......................................................................... 20

*United States v. Amirnazmi*,
645 F.3d 564 (3d. Cir. 2011) .................................................. 58-59, 65

*United States v. Awad*,
551 F.3d 930 (9th Cir. 2009) ............................................................ 86

*United States v. Baldwin*,
745 F.3d 1027 (10th Cir. 2014) ...................................... 44, 57, 59, 61

*United States v. Bibbins*,
637 F.3d 1087 (9th Cir. 2011) .......................................................... 81

*United States v. Bichsel*,
395 F.3d 1053 (9th Cir. 2005) .......................................................... 74

*United States v. Carpenter*,
923 F.3d 1172 (9th Cir. 2019) .......................................................... 21

*United States v. Carter*,
236 F.3d 777 (6th Cir. 2001) ............................................................ 70

*United States v. Charley*,
1 F.4th 637 (9th Cir. 2021) ....................................................... 21, 68

*United States v. Cruscial*, No. 3:18-cr-00465-JR,
2019 WL 1087150 (D. Or. March 7, 2019) .................................. 72-73

*United States v. Dhafir*,
461 F.3d 211 (2d. Cir. 2006) .................................................................. 59

*United States v. Estrada-Iglesias*,
425 F. Supp. 3d 1265 (D. Nev. Dec. 2, 2019) .................................... 81

*United States v. Gonzalez-Flores*,
418 F.3d 1093 (9th Cir. 2005) ............................................................ 21, 69

*United States v. Huizar*,
762 F. App'x 391 (9th Cir. 2019) ........................................................ 73

*United States v. Lugo*,
613 Fed. App'x 581 (2015) ................................................................. 70

*United States v. Melgar-Diaz*,
2 F.4th 1263 (9th Cir. 2021) .............................................................. 41

*United States v. Moriello*,
980 F.3d 924 (4th Cir. 2020) ........................................................ 44, 64

*United States v. Mumford*, No. 3:17-CR-0008-JCC,
2017 WL 652449 (D. Or. Feb. 16, 2017) ............................................ 64

*United States v. Nichols*,
784 F.3d 666 (10th Cir. 2015) ........................................ 54, 61, 63, 66

*United States v. Niebla-Torres*,
678 F. App'x 487 (9th Cir. 2017) ........................................................ 69

*United States v. Pheasant*,
129 F.4th 576 (9th Cir. 2025) ......................... 42, 43-44, 44, 46, 64, 65

*United States v. Plancarte-Alvarez*,
366 F.3d 1058 (9th Cir. 2004) ............................................................ 32

*United States v. Robel*,
389 U.S. 258 (1967) ........................................................................... 57

*United States v. Sanchez*,
659 F.3d 1252 (9th Cir. 2011) ............................................................ 70

*United States v. Sharpnack*,
355 U.S. 286 (1958) .................................................................... 57

*United States v. Singh*,
979 F.3d 697 (9th Cir. 2020) ............................................... 81, 83

*United States v. Tuan Ngoc Luong*,
965 F.3d 973 (9th Cir. 2020) ......................................................... 21

*W. Virginia v. Env't Prot. Agency*,
597 U.S. 697 (2022) ................................................... 48, 49, 50, 51

*Wayman v. Southard*,
23 U.S. (10 Wheat.) 1 (1825) ......................................................... 51

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) .................................................................... 51

## U.S. CONSTITUTION

U.S. CONST. art. I, § 1 ......................................................... 51, 54

U.S. CONST. art. II, § 1 ................................................................ 51

U.S. CONST. art. III, § 1 ............................................................... 51

U.S. CONST. art. IV, § 3, cl. 2 ................................... 43, 45, 51, 54, 90

## STATUTES

18 U.S.C. § 3231 ........................................................................ 16

18 U.S.C. § 3401 ........................................................................ 16

18 U.S.C. § 3402 ........................................................................ 16

20 U.S.C. § 1098bb .................................................................... 50

21 U.S.C. § 201 .......................................................................... 62

28 U.S.C. § 1291 ........................................................................ 16

40 U.S.C. § 1315 ............................ 17, 41, 43, 51, 52, 54, 60, 62, 90, 98

40 U.S.C. § 318 .......................................................................... 60

43 U.S.C. § 1732 ........................................................................ 65

## FEDERAL REGULATIONS

6 C.F.R. § 139.15 .................................................. 13, 18, 95, 96, 97, 98
6 C.F.R. § 139.30 .......................................................................... 99
6 C.F.R. § 139.65 .......................................................................... 99
36 C.F.R. § 2.32 ...................................................................... 74, 75
41 C.F.R. § 102-74.365 ........................................................ 62, 18, 61
41 C.F.R. § 102-74.385 ................................................ 37, 61, 73, 79
41 C.F.R. § 102-74.420 ..................................................... passim
41 CFR part 102-74 subpart C ............................................... 19, 27

## FEDERAL RULES

Fed. R. Crim. P. 58 ...................................................................... 16
Fed. R. Evid. 403 ..................................................................... 32, 69
Fed. R. Evid. 404(b) .................. 13, 15, 21, 30, 31, 32, 33, 35, 66, 67, 71

## OTHER

*Richard L. Revesz, The Evolution of Regulatory Review*,
77 Admin. L. Rev. 131 (2025) ........................................................ 49

## STATEMENT OF ISSUES

**Issue One:**

Enabling statutes must provide an intelligible principle to constrain regulatory power. Here, the challenged regulations were promulgated pursuant to § 1315(c)'s expansive language, which lets executive agencies promulgate regulations that exposed West to jail time for photographing in office space that the Social Security Administration leases. Does § 1315(c)'s expansively broad language combined with 6 C.F.R § 139.15's expansive definitions impermissibly delegate to executive agencies the power to criminally prohibit photography in leased office space?

**Issue Two:**

Prejudice is presumed with erroneously admitted Rule 404(b) evidence. Here, the court found error in admitting West's prior failure-to-appear conviction and probation condition (prohibiting possessing a camera or recording device at a police department or city hall). But the court found no prejudice where the prosecutor argued that the evidence showed West knew he could not videotape at the federally leased space. Did the district court err in discounting the presumption of prejudice?

**Issue Three:**

> To be sufficient, evidence must prove each element of a charged offense. Here, the recorded interactions between West and Social Security office staff prove that:
>
> - West was never issued an unambiguous command to stop recording to avoid being cited or arrested for failing to comply;
> - Social Security office staff confirmed West's belief that he was allowed to record in areas such as "lobbies" and "corridors" covered by 41 C.F.R. § 102-74.420(c) as indicated on posted signs; and
> - West only filmed in areas he believed were "lobbies" and "corridors" covered by 41 C.F.R. § 102-74.420(c).
>
> Given these facts, was the evidence insufficient to support West's convictions?

## SUMMARY OF ARGUMENT

The Court should reverse West's convictions on three grounds.

First, because the regulations under which West was charged were promulgated pursuant to unconstitutional delegation of authority, the Court should dismiss on all three citations. Here, the regulations are invalid because Congress' delegation of the power to impose criminal penalties lacked specificity and did not contain an intelligible principle to constrain the executive branch's exercise of legislative power.

Second, the magistrate judge erred in admitting West's prior state court criminal conviction documents under Federal Rule of Evidence 404(b). This Court should affirm the district court judge's finding that admitting the conviction documents violated Rule 404(b) and resulted in presumed prejudice. But this Court should reverse the district court judge's conclusion that the presumed prejudice was overcome as that conclusion is based on a misapprehension of the prejudicial effect of the prosecutor using that evidence in closing arguments. Because the government cannot rebut presumed prejudice here, this Court should reverse and remand for a new trial.

Third, the evidence was insufficient to support West's three convictions. First, West was never issued an unambiguous command to stop recording that put him on notice he would be cited or arrested for not complying, nor did West knowingly and willfully fail to comply with any such command. Second, West never knowingly and willfully failed to comply with posted signs because Social Security office staff confirmed his belief that he was allowed to record in areas such as "lobbies" and "corridors" covered by 41 C.F.R. § 102-74.420(c). Third, West's filming did

not violate any officially promulgated rule or regulation, and he only filmed in areas he believed were "lobbies" and "corridors" covered by 41 C.F.R. § 102-74.420(c). Thus, this Court should vacate his convictions based on insufficient evidence.

## JURISDICTIONAL STATEMENT

This appeal is from the district court's opinion affirming West's convictions.[1] The magistrate judge exercised jurisdiction over the charged misdemeanors under 18 U.S.C. § 3231 and 18 U.S.C. § 3401. The district court judge had jurisdiction over the appeal from the judgment of conviction. 18 U.S.C. § 3402; FED. R. CRIM. P. 58(g)(2)(A). West timely filed his notice of appeal within 14 days after the entry of judgment. FED. R. CRIM. P. 58(g)(2)(B).[2] This Court has jurisdiction under 28 U.S.C. § 1291. West filed a timely notice of appeal within fourteen days after the entry of judgment affirming the magistrate judge's judgment.[3]

---

[1] ER-4–18.

[2] ER-65–66.

[3] ER-3.

## STATUTORY AND REGULATORY AUTHORITY

### A. 40 U.S.C. § 1315 governs federally owned or occupied property.

Under 40 U.S.C. § 1315(c)(1), Congress delegated to the Secretary of Homeland Security the authority to "prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal government and persons on the property" and to impose penalties for violations of such regulations. The statute states that "[a] person violating a regulation prescribed under this subsection shall be fined under title 18, United States Code, imprisoned for not more than 30 days, or both." 40 U.S.C. § 1315(c)(2); *see also* 41 C.F.R. § 102-74.450 (setting a 30-day maximum term of imprisonment for regulatory violations).

Here, West was convicted of violating two regulations promulgated pursuant to that statute, which are each set forth below.

### B. 41 C.F.R. § 102-74.385 — What is the policy concerning conformity with official signs and directions?

> Persons in and on property must at all times comply with official signs of a prohibitory, regulatory or directory nature and with the lawful direction of Federal police officers and other authorized individuals.

### C. 41 C.F.R. § 102-74.420 — What is the policy concerning photographs for news, advertising or commercial purposes?

> Except where security regulations, rules, orders, or directives apply or a Federal court order or rule prohibits it, persons entering in or on Federal property may take photographs of—
>
> **(a)** Space occupied by a tenant agency for non-commercial purposes only with the permission of the occupying agency concerned;
>
> **(b)** Space occupied by a tenant agency for commercial purposes only with written permission of an authorized official of the occupying agency concerned; and
>
> **(c)** Building entrances, lobbies, foyers, corridors, or auditoriums for news purposes.[4]

### D. 41 C.F.R. §§ 102-74.365 through 102-74.455 were removed and rescinded effective November 5, 2025, about two months after the notice of appeal was filed in this case.

On January 20, 2026, the GSA issued a final rule amending "the Federal Management Regulation; Conduct on Federal Property" (FMR). 91 FR 2316-01; 2026 WL 129046.[5] This rule amends the FMR to remove

[4] "Federal tenant means a Federal department or agency that occupies space and pays rent on space in any Federal facility under the protection responsibility of the Secretary of Homeland Security." 6 C.F.R. § 139.15

[5] "GSA" stands for the U.S. General Services Administration.

regulations that were deemed "duplicative" or "not required by statute." *Id.*

Before GSA's final rule, DHS relied,[6] as here, upon the regulations found in 41 CFR part 102-74 subpart C. But because the FMR applied only when conduct was committed on GSA leased or managed property itself, and not adjacent thereto, the FMR was deemed duplicative but too narrow in scope. 91 FR 2316-01; 2026 WL 12906 (explicitly removing and reserving subpart C, consisting of §§ 102-74.365 through 102-74.455 and 41 CFR Pt. 102-74, App. A).

## Custody Status and Release Date

West is not in custody; he was ordered to pay a $280.00 fine.

## Standards of Review

### A. Statutory delegation of executive powers

This Court "review[s] legal questions, including questions of statutory interpretation, *de novo*." *Lopez v. Garland*, 116 F.4th 1032, 1036 (9th Cir. 2024) (citing *Diaz-Quirazco v. Barr*, 931 F.3d 830, 838 (9th Cir. 2019)).

---

[6] "DHS" stands for the U.S. Department of Homeland Security.

Generally, "executive determinations … are subject to judicial review." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995). "The responsibility of determining the limits of statutory grants of authority … is a judicial function entrusted to the courts." *Stark v. Wickard*, 321 U.S. 288, 310 (1944). "The duty of the Judiciary … is to determine … whether the Executive branch has correctly applied the statute that establishes its authority." *Chadha v. Immigr. & Naturalization Serv.*, 634 F.2d 408, 430 (9th Cir. 1980), *aff'd*, 462 U.S. 919 (1983). "[L]egal interpretation … has been 'emphatically,' 'the province and duty of the judicial department' for at least 221 years." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)). "Judges have always been expected to apply their 'judgment' independent of the political branches when interpreting the laws those branches enact," *Loper Bright*, 603 U.S. at 412 (citing The Federalist No. 78, at 523).

### B. Federal Rule of Evidence 404(b) violations

Because the district court found a 404(b) violation, this Court "start[s] with a presumption of prejudice" as to the effect of the erroneously admitted other-act evidence. *United States v. Carpenter*, 923 F.3d 1172, 1182 (9th Cir. 2019). Evidentiary errors "are not harmless unless it is more probable than not" that the government's use of the erroneously admitted evidence did not affect the verdict. *United States v. Charley*, 1 F.4th 637, 651 (9th Cir. 2021); *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1099 n.3 (9th Cir. 2005) (stating that the government must show that "the error more likely than not did not affect the verdict").

### C. Insufficient evidence claims

Claims of insufficient evidence are reviewed de novo. *See United States v. Tuan Ngoc Luong*, 965 F.3d 973, 980–81 (9th Cir. 2020).

## STATEMENT OF THE CASE

West was convicted, after a magistrate judge bench trial, of violating three federal regulations: (1) failure to comply with official signage in violation of 41 C.F.R. § 102-74.385 (Citation 9088788); (2) failure to comply with a lawful directive of a federal officer in violation of 41 C.F.R. § 102-74.385 (Citation 9088789); and (3) unauthorized video recording on

federal property in violation of 41 C.F.R. § 102-74.420 (Citation 9088792).[7]

West timely appealed to the district court judge, asserting: (1) the magistrate judge erred in admitting a prior criminal conviction; (2) the evidence was insufficient to support any of his convictions; and (3) Congress violated the Constitution by delegating to the executive branch the power to promulgate the regulations at issue.[8]

The district court judge to whom the case was appealed found: "[1] that the admission of the prior conviction [evidence] was harmless error, [2] that the evidence was sufficient to support each of Defendant's convictions, and [3] that the regulations at issue were not promulgated pursuant to an unlawful delegation of legislative power."[9] Based on those findings, the district court affirmed West's convictions.

[7] Although West initially received five citations, two citations (9088790 and 9088791) were dismissed before trial. ER-65 n. 1.

[8] ER-4.

[9] ER-4–5.

## STATEMENT OF FACTS

### A. West received citations for video recording inside the hallway of the Social Security Administration Hearings Office space leased by the General Services Administration.[10]

On January 26, 2024, West entered the Social Security Administration (SSA) Hearings Office at the Lloyd Center in Portland, Oregon. He passed through the security checkpoint, conducted business at the reception window, and then took out his cell phone and began filming the signs posted on the wall in the reception area.[11]

Patrick Carpenter, a civilian employee who works under government contract as a protective service officer, approached West and told him that the facility didn't "allow recording" based on signs that were posted.[12] Moments later, another Social Security employee came out and advised West, "there's no recording in here."[13]

[10] The district court's written opinion summarizes the facts under a "Background" heading. ER-5–8.

[11] ER-65–66; ER-97–100; Gov't Ex. 5. Exhibit 5 is a 19:55-minute video recording taken by West at the Social Security Hearings Office.

[12] ER-98–99; Gov't Ex. 5 at 00:40.

[13] Gov't Ex. 5 at 00:50.

Carpenter drew West's attention to a posted sign stating, "PHOTOGRAPHY AND VIDEOGRAPHY PROHIBITED."[14] The sign further




stated: "Federal law and SSA policy prohibits taking pictures or video inside SSA offices without the expressed written consent of an authorized official of the agency."[15]

West requested clarification, asking "Can you show me the law?"[16] When Carpenter responded that he could not identify the law but again noted that the sign prohibited recording, West explained that he had just

[14] ER-53 (Gov't Ex. 3); Gov't Ex. 5 at 01:10.
[15] ER-53 (Gov't Ex. 3).
[16] Gov't Ex. 5 at 01:14.

seen a different sign in the hallway that said he could record in certain parts of the building.[17]

West and Carpenter then walked together into the hallway and looked at a sign that quoted 41 C.F.R. § 102-74.420, which provides:

> Except where security regulations, rules, orders, or directives apply or a Federal court order or rule prohibits it, persons entering in or on Federal property *may take photographs of*—
>
> **(a)** Space occupied by a tenant agency for non-commercial purposes only with the permission of the occupying agency concerned;
>
> **(b)** Space occupied by a tenant agency for commercial purposes only with written permission of an authorized official of the occupying agency concerned; and
>
> **(c)** *Building entrances, lobbies, foyers, corridors, or auditoriums* for news purposes.[18]

West explained that he understood that regulation permitted recording "unless there's a court order or a law that says you can't do it."[19] After reading the sign to himself, *Carpenter did not dispute West's understanding* but said that another employee was retrieving a supervisor.[20]

[17] Gov't Ex. 5 at 01:25.

[18] ER-54 (Gov't Ex. 4) (emphasis added); Gov't Ex. 5 at 01:25-01:53.

[19] Gov't Ex. 5 at 01:43; *see also* Gov't Ex. 5 at 02:13 (West stating, "[A]ccording to that, I can film in there[.]").

[20] Gov't Ex. 5 at 01:53-02:12.

Several minutes later, Jessica Witt approached and identified herself as the manager of the office.[21] She politely asked West "to please stop recording."[22] West again sought clarification, asking whether recording was against the law: "Is there a federal law that says I can't record, or is it just a federal rule."[23] After Witt pointed out the same sign that Carpenter had relied on, West again noted the conflicting sign in the hallway that permit photography in certain areas.[24] Witt responded, "Let's go take a look at it."[25]

Returning to the hallway again, Witt read the regulation to herself and told West that § 102-74-420(c)'s allowance of recording in "entrances, lobbies, foyers, corridors, or auditoriums" permitted recording in the hallway where they were standing, but not in the "reception area" through the doorway where West had previously been.[26] West responded that he believed that area was a "lobby"; Witt disagreed.[27]

---

[21] Gov't Ex. 5 at 03:50.
[22] Gov't Ex. 5 at 03:55.
[23] Gov't Ex. 5 at 03:56.
[24] Gov't Ex. 5 at 04:00-04:16.
[25] Gov't Ex. 5 at 04:15.
[26] Gov't Ex. 5 at 04:30-04:55.
[27] Gov't Ex. 5 at 04:57-05:18.

Witt then gave West a choice: "[E]ither we can cut the recording or I'm going to ask you to leave and I'll talk to the judge and ask to postpone your hearing."[28] That choice was discussed for several minutes as West continued to express his understanding that the posted regulation allowed him to record in the designated areas.[29] While that discussion was ongoing, Carpenter pointed to a nearby sign, entitled "Prohibition of Photography, Videography, and audio recording in Social Security Administration offices."[30] The sign stated, in pertinent part: "In accordance with 41 CFR 102-74.420, the agency prohibits all photography, video recording, and audio recording in agency-occupied facilities (including entrances, lobbies, foyers, corridors, and auditoriums) unless approved in advance and in writing by an authorized official of the agency."[31]

Returning to the sign that quoted § 102-74.420, West again stated his understanding that he was allowed to record in foyers, corridors, and lobbies.[32] Indicating the area through the doorway, he asked Witt, "So

[28] Gov't Ex. 5 at 5:20.
[29] Gov't Ex. 5 at 05:20-06:54.
[30] ER-54 (Gov't Ex. 4); Gov't Ex. 5 at 06:04.
[31] ER-54 (Gov't Ex. 4).
[32] Gov't Ex. 5 at 06:56-07:27.

you're saying that that's not a lobby," to which Witt responded, "I'm saying you cannot record in that area."[33] West then stated out loud his understanding that he *could* record in the hallway, just not in the reception area or lobby that was through the doorway.[34] Although Witt did not audibly respond, she returned to the reception area and again asked West whether he was choosing to stay or to postpone his hearing.[35] When he said that he was going to film, she said "You can't film in *here*," indicating the reception area and reiterated that she had explained why he was not allowed to record in that area.[36] Although West continued recording, he remained in the hallway and did not go back into the area Witt identified as a photography-free zone.[37] Several minutes later, West left the building.

---

[33] Gov't Ex. 5 at 07:28-07:35.
[34] Gov't Ex. 5 at 07:36-07:45.
[35] Gov't Ex. 5 at 07:52-08:08.
[36] Gov't Ex. 5 at 08:09.
[37] Gov't Ex. 5 at 08:10-19:55.

After West left the Lloyd Center, he was approached by Inspector Hunter Crofoot of the Federal Protective Services, who cited him for violating 41 C.F.R. § 102-74.385 by failing to conform with signage and directions.[38]

On February 2, 2024, Crofoot viewed the video of West's encounter — that West had uploaded to his YouTube channel — and issued four more citations.[39] Three of the citations were for violating 41 C.F.R. § 102-74.385, one citation for each of the three individuals who allegedly gave West lawful directives to stop recording.[40] The final citation was for violating 41 C.F.R. § 102-74.420 by taking a video in violation of security regulations.[41] The video West created shows that West was filming tenant-controlled space where posted signage can be read to prohibit it.[42]

---

[38] ER-156 (Citation 9088788); *see also* ER-124.

[39] ER 124-25.

[40] ER-157 (Citation 9088789); ECF 1 (Citation 9088790); ECF 5 (Citation 9088791).

"ECF" refers to the district court's Electronic Case Filing docket entries and documents.

[41] ER-155 (Citation 9088792).

[42] Gov't Ex. 5.

### B. Before trial, the magistrate judge erroneously ruled that, under Rule 404(b), the government could use a prior criminal conviction and expired probation condition from an unrelated state case as evidence of West's knowledge that he could not use his cell phone to create a video in federally leased office space.

The district court judge properly ruled that the magistrate judge had erroneously admitted 404(b) evidence. But the district court erred in finding that the presumed prejudice from that admission was rebutted simply because the evidence was used at the end of the trial by the prosecutor during closing argument.

For trial, the parties stipulated to the elements the government was required to prove for each offense.[43] As to § 102-74.385, the parties agreed that the government was required to prove West willfully failed to comply with either an "official, prohibitory sign" or "[l]awful directives from an authorized individual."[44] The parties further agreed that West had to commit the offense knowingly and willfully, which required that West have notice.[45] As to § 102-74.420, the parties agreed the govern-

[43] ER-145.
[44] ER-145.
[45] ER-146.

ment had to prove *either* that "[s]ecurity regulations, rules, orders, or directives" prohibited photography on the federal property, *or* that West took photographs other than in one of the three ways authorized in subsections (a), (b), or (c) of the regulation.[46] Subsection (c) allows photography in "[b]uilding entrances, lobbies, foyers, corridors, or auditoriums for news purposes." *Id.*

The government filed a notice under Federal Rule of Evidence 404(b) that it intended to offer other-act evidence against West, including a state court judgment of conviction from October 2022 for failure to appear on a citation.[47] The government relied on the probation condition in that case, which prohibited West from possessing "camera or recording devices at any police department or municipal city hall building."[48] The government claimed this condition was relevant to prove West "had notice that he would be subject to rules prohibiting video recording while on government property."[49]

[46] ER-146.
[47] ER-148–54.
[48] ER-57 (Gov't Ex. 13). ER-148, 151.
[49] ER-153.

West objected, arguing that the condition of probation had no relevance to any issue at trial, and it was too dissimilar to meet the standards for admissibility under Rule 404(b).[50] West had been prohibited from possessing recording devices in certain specified locations while on state probation. But that expired probation condition did not tend to prove West acted knowingly years later when he allegedly failed to comply with federal signs or lawful directives from SSA staff.[51]

The defense pointed out that, aside from involving a different governmental entity, a different rule, a different building, and a different underlying act, the 12-month period of state probation had expired by the time of the events charged in this case, so the condition was no longer in effect.[52] The defense further argued that, even if the prior conviction had some minimal relevance, it should be excluded under Rule 403 due to the risk of unfair prejudice.[53]

---

[50] ECF 43 at 2–5 (citing *United States v. Plancarte-Alvarez*, 366 F.3d 1058 (9th Cir. 2004)).

[51] ECF 43 at 3.

[52] ECF 43 at 3–5.

[53] ECF 43 at 5.

The magistrate judge admitted the prior conviction under Rule 404(b):

> I am going to allow admission of the defendant's prior conviction of Criminal Mischief III and the judgment outlining the conditions of probation prohibiting filming in government facilities. I find pursuant to the [*Plancarte*-]*Alvarez* case, Ninth Circuit, 2004, those four conditions are met, and I do not find that the probative value of the evidence is substantially outweighed by any prejudice.[54]

As indicated above, the district court judge found that the 404(b) evidence should have been excluded but that the error was harmless because the prosecutor relied on the 404(b) evidence during closing argument rather than during the bench trial itself.[55]

### C. The facts at trial were largely undisputed except as to West's mental state and whether his conduct legally satisfied the elements of the two charged regulations.

Before trial, the magistrate judge granted in part West's motion to dismiss multiplicitous charges and required the government to elect one of the three "lawful direction" violations charged under § 102-74.385.[56]

[54] ER-77.

[55] *See* ER-8–11.

[56] ECF 45 (docketed minutes of March 7, 2025, proceedings); ER-81–83; ECF 40 at 1–7.

The government proceeded under Citation 9088789 based on the order from Protective Service Officer Carpenter and dismissed Citations 9088790 and 9088791.[57] The government also proceeded under Citation 9088788, for allegedly violating § 102-74.385 by failing to comply with posted signs, and Citation 9088792, for allegedly violating § 102-74.420 by "taking [a] video in violation of security regulation[s]."[58]

At trial, the government introduced clips from West's video, photos of the posted signs, and testimony from Carpenter, Witt, and Crofoot.[59] The defense did not present evidence. The government witnesses' testimony largely corroborated what appeared on West's video and provided details regarding what occurred before and after the video clips. Witt conceded that she told West "he could record in the hallways but not our reception area, the area where the guard's desk was."[60] But she testified that she "misspoke" when she said that because, in actuality, "SSA leases the entirety of the floor, so really he should have been prohibited from

[57] ER-83, 85.

[58] ER-82–83.

[59] ER-88–125; ER 52-60.

[60] ER-114.

filming anywhere."[61] When asked on cross-examination whether the regulation posted in the hallway, 41 C.F.R. § 102-74.420, "permits recording in certain listed scenarios," Witt responded, "I don't know."[62]

Carpenter and Witt both testified that their statements to West were phrased in terms of telling him that the facility did not "allow" recording and asking him to stop, but they did not tell West that recording was illegal or that he could be arrested or cited for recording.[63]

The court received Exhibit 13 — the Clackamas County judgment addressed in the pretrial Rule 404(b) ruling — into evidence directly before making a ruling, after closing arguments.[64] In closing, the government argued that West was "on notice" that the Social Security Hearings Office prohibited video recording even before he came to the office because of West's prior condition of probation: "Being told by the judge as part of a probation condition that you cannot record on state government

[61] ER-114.

[62] ER-118. This concession shows the evidence of willful noncompliance was insufficient.

[63] ER-103, 119.

[64] ER-137 ("Exhibit 13 is received as well, based on the pretrial ruling.").

property puts the defendant on notice that he may be subject to the same restrictions on other types of federal property."[65]

The defense argued the government had failed to prove West's conduct was willful because West was "given conflicting information about where filming was and wasn't allowed."[66] West was not told he would be arrested if he continued to film, but instead was "offered a choice" to "either stop recording and stay, or continue recording and have his hearing postponed."[67] Carpenter's statement to West that recording is not allowed was not a "lawful direction" because it did not meet the factors established by case law to qualify as an unambiguous command.[68] Moreover, West only filmed in areas listed under § 102-74.420(c).[69]

At the close of trial, the judge found the government witnesses credible and concluded that the government had proven West guilty beyond

[65] ER-130.
[66] ER-133.
[67] ER-133.
[68] ER-134–35.
[69] ER-135.

a reasonable doubt on all three charges.[70] As to the two alleged violations of § 102-74.385, the magistrate judge stated:

> I find that the evidence demonstrates beyond a reasonable doubt that defendant willfully and knowingly, after sufficient notice, violated [§ 102-74].385. Specifically, he failed to comply with a specific official sign of a prohibitory, regulatory, or directory nature while on federal property....
>
> I find a second violation of [§ 102-74].385 beyond a reasonable doubt when defendant failed to follow a lawful directive or order by authorized individuals, specifically by Protective Service Officer Patrick Carpenter[.][71]

As to the alleged violation of § 102-74.420, the judge denied a First Amendment claim and then concluded: "I find that the evidence supports defendant's violation of .420 beyond a reasonable doubt by his persistent filming in the Social Security agency."[72]

### D. The district court findings

West appealed to the district court judge, raising the same three arguments raised in this appeal.[73]

---

[70] ER-137–38.
[71] ER-137.
[72] ER-138.
[73] ER-4–5.

Assessing the first claim, the district court judge found that admission of the 404(b) evidence was "of little, if any, probative value" but inclusion of the evidence was harmless.[74] The court acknowledged that the probation condition excluding filming in certain state buildings did not have a "sufficient logical connection" to the crime charged to render it admissible under 404(b)(2).[75] Regardless, the court held that admission of the probation conditions was harmless error because it was only referred to in the closing argument to show West knew there may be rules about recording at the federally leased space.[76] The court also noted that West appeared to acknowledge there were rules about recording, making the admission of the evidence less prejudicial.[77]

Addressing the sufficiency claim, the district court judge determined a "reasonable factfinder could have found each of the elements for each of the convictions."[78] Assessing the evidence for the failure-to-follow-a-lawful-directive conviction, the court found that Carpenter's statement

---

[74] ER-8.
[75] ER-10.
[76] ER-10–11.
[77] ER-11.
[78] ER-12.

"we don't allow recording" in the federally leased space and subsequent pointing at a sign outlawing videography was a clear directive to stop filming or face arrest.[79] The court found that the "posted regulations" referring to criminal penalties "afforded [West] fair notice that he could be arrested for violating the prohibition on recording[.]"[80] Finally, the court dismissed West's argument that he was "not given a reasonable opportunity to understand and comply with the directives" by offering other actions West could have taken, such as waiting in the hallway or pausing his recording before entering the hearings office space.

In considering the sufficiency of the evidence for West's conviction for failure to comply with a posted sign, the court found that a "reasonable factfinder could find that West … willfully disobeyed the sign prohibiting recording[.]"[81] The court determined the language on both signs, taken together, was "sufficient to provide notice that [West's] conduct was unlawful."[82] The court also noted that "the evidence suggests" West

---

[79] ER-12-13.
[80] ER-13.
[81] ER-14.
[82] ER-14.

may have understood the signs and just believed they did not "have the force of law."[83]

Assessing the evidence for West's conviction for unlawful recording under 41 C.F.R. § 102-74.420, the court found the evidence sufficient.[84] The court noted that § 102-74.420 is a "default rule," which permits photography, "[e]xcept where security regulations, rules, orders, or directives apply or a Federal court order or rule prohibits it."[85] The court found the signs posted in the hallway, which limited recording, were an order or directive for the purpose of § 102-74.420. West's argument as to whether he was in a lobby or reception area was dismissed because he recorded a hearing room, which "by any definition is not a lobby."[86]

---

[83] ER-14.

[84] ER-14.

[85] ER-14 (citing § 102-74.420).

[86] ER-14. Notably, West did *not* record from inside a hearing room. He recorded a miniscule video snippet of a hearing through a small, narrow window on the hearing room door. That inscrutable portion of the video is four seconds long and, the video reveals no private or sensitive audio or video. Gov't Ex. 5 at 3:17-22.

As to West's third argument, that 40 U.S.C. § 1315(c) is an unconstitutional delegation of power, the court held that "the statute sufficiently articulates an intelligible principle to survive a nondelegation challenge."[87] The district court viewed the non-delegation principle is an "exceedingly modest limitation" requiring Congress to articulate "some form of policy or standard to confine discretion[.]"[88] The district court found that § 1315(c) imposes two "critical limits on the delegation that, together, provide an intelligible principle."[89] First, § 1315(c)(1) imposes a limit on the space where regulations apply: "property owned or occupied by the Federal Government." Second, the regulations are limited to what is "'necessary for the protection and administration' of federal property."[90] The court noted that this limitation is "broadly worded" but nonetheless "functions as a limitation[.]"[91] The court also "acknowledge[d] that

[87] ER-8.

[88] ER-16 (citing *United States v. Melgar-Diaz*, 2 F.4th 1263, 1266-67 (9th Cir. 2021) and *Gundy v. United States*, 588 U.S. 128, 146 (2019)).

[89] ER-17.

[90] ER-17 (citing § 1315(c)(1)).

[91] ER-17.

§ 1315(c) does not impose particularly specific limitations" but that other similar delegations have been upheld.[92]

On these bases, the district court affirmed West's convictions.[93]

# ARGUMENT

## I. The statute authorizing the GSA to promulgate the charged regulations is an unconstitutional delegation of legislative power by Congress.

### A. District court ruling

West argued that he was charged based on regulations promulgated in violation of the separation of powers principle, after Congress impermissibly delegated the power to enact and enforce a criminal code without providing an intelligible principle to constrain that power.[94] More specifically, West argued that the regulations he was convicted of violating were invalid because Congress' delegation of the power to impose criminal penalties lacked specificity and did not contain an intelligible principle to guide and constrain the executive's exercise of legislative power.[95]

---

[92] ER-18 (citing *United States v. Pheasant*, 129 F.4th 576, 580, 583 (9th Cir. 2025)).

[93] ER-7, 18.

[94] ER-15–16.

[95] ER-15–16.

The District Court disagreed and found that:

> Section 1315(c) satisfies the "intelligible principle" standard. The statute directs the Secretary of Homeland Security to "prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government," including imposing "reasonable penalties" for violations of those regulations. 40 U.S.C. § 1315(c). This regulation imposes two critical limits on the delegation that, together, provide an intelligible principle.
>
> First, the regulations apply only within a defined space: "property owned or occupied by the Federal Government." § 1315(c)(1). This provision suggests that the nondelegation doctrine's application to § 1315(c) may be limited. The nondelegation doctrine, as noted above, is derived by implication from Article I's Legislative Vesting Clause, but Congress's power to make regulations governing federal property is derived from Article IV's Property Clause. *See Kleppe v. New Mexico*, 426 U.S. 529, 535 (1976) (citing U.S. Const. art. IV, § 3, cl. 2). This Court is aware of no cases applying the nondelegation doctrine to the Property Clause, which is not necessarily equivalent to the legislative powers at issue in other nondelegation cases. *See Camfield v. United States*, 167 U.S. 518, 525 (1897) (describing federal power over public property as analogous "to the police power of the several states"). This basis for the statute "counsels in favor of more, rather than less, deference to Congress's choice about the degree of responsibility to assign to the Executive Branch."

*United States v. Pheasant*, 129 F.4th 576, 582 (9th Cir. 2025).

Second, the regulations must be "necessary for the protection and administration" of federal property. § 1315(c)(1). Although broadly worded, this language functions as a limitation: any regulations must be necessary "to maintain and protect [federal] property and ensure its use for [its] authorized purpose," as defined by Congress. *United States v. Cassiagnol*, 420 F.2d 868, 876–77 (4th Cir. 1970) (interpreting a predecessor statute). The intelligible principle provided by this language, considered in the context of the statute as a whole, makes § 1315 "clearly a permissible delegation." *United States v. Moriello*, 980 F.3d 924, 933 (4th Cir. 2020).

This Court acknowledges that § 1315 does not impose particularly specific limitations. *See United States v. Baldwin*, 745 F.3d 1027, 1030 (10th Cir. 2014) (Gorsuch, J.) (querying whether Congress may "so freely delegate the core legislative business of writing criminal offenses to unelected property managers at GSA"). But similarly broad delegations have been repeatedly upheld. *see Pheasant*, 129 F.4th at 580 (9th Cir. 2025) (collecting cases), even when regulations may be backed by criminal penalties, *see id.* at 583 (collecting cases). This Court concludes that § 1315(c)(1) includes an intelligible principle that meaningfully constrains executive discretion and therefore rejects Defendant's nondelegation challenge.[96]

[96] ER-16–18.

The district court incorrectly invoked the property clause as that clause applies to public lands, not leased properties. Further, the court incorrectly concluded there is an intelligible principle guiding the delegation of powers. Rather, Congress impermissibly delegated legislative authority to DHS and GSA with the only meaningful restrictions being the general limits of federal authority.

### B. The Property / Public Lands Clause finds no application here because GSA leased the office space which shows the transient rather than proprietary nature of the federal occupation of the office space.

With emphasis added, Article IV, Section 3, Clause 2, provides:

> The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the **Territory or other Property belonging to the United States**; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State.

Here, the district court cites *Kleppe v. New Mexico*, 426 U.S. 529, 535 (1976), for the proposition that the Property Clause is expansive enough to sanction regulating leased space. But *Kleppe* involved the Wild Free-roaming Horses and Burros Act, which Congress passed after deem-

ing regulated animals "an integral part of the natural system of the public lands" of the United States, with the aim of achieving "an ecological balance on the public lands." *Id.* at 535. Leased office space is not federal or public land.

The district court similarly points to *Pheasant*, 129 F.4th at 582, as evidence that the Property Clause forms the underlying basis for the statute's authority.[97] However, *Pheasant* specifically deals with a challenge to rules governing BLM-administered federal land. *Pheasant*, 129 F.4th at 578-79.

While acknowledging the power and limitations of Article I, the district court pointed to the Property Clause in Article IV as an alternative source for "Congress' power to make regulations governing federal property."[98] The court assumed without support that the Property Clause enables Congress's delegation of legislative authority. After making that assumption, and because the district court found no case law "applying the nondelegation doctrine to the Property Clause," the court reasoned

[97] ER-17.
[98] ER-17.

that the Property Clause "basis for the statute counsels in favor of more … deference to [Congress]."[99]

The court's novel assumption that the Property Clause applies is unsupported. The Property Clause is commonly understood as it applies to public lands, territories, and other federally controlled lands. An exhaustive search for cases applying the Property Clause to leased office space turns up nothing. The Supreme Court has directly cited the Property Clause in thirty-two cases. These cases overwhelmingly deal with questions regarding federal power within territories, the District of Columbia, public lands, military property, and Indian lands. This Circuit has decided seventy cases that directly cite the Property Clause. The issues presented in those cases mirror those in the Supreme Court and none touch on federally leased space. This lack of support may explain why the district court cited no authority in support of its assumption that the Property Clause in Article IV enables Congress's delegation of legislative authority.

[99] ER-17 (internal citations omitted).

### C. Congress exceeded its authority by delegating unintelligibly broad authority to DHS/GSA agencies.

As a matter of law, the charges should be dismissed because the regulations on which they are based were promulgated in violation of the separation of powers principle, after Congress impermissibly delegated to the executive branch the power to enact and enforce a criminal code without providing an intelligible principle to constrain the exercise of that power. That is, the challenged regulations were also promulgated under a statute that violates the non-delegation doctrine. Moreover, the major questions doctrine weighs in favor of finding that Congress, through § 1315, has not empowered DHS/GSA to ban cameras from public hallways in federally leased spaces.

As the Supreme Court has noted: "Agencies have only those powers given to them by Congress, and enabling legislation is generally not an open book to which the agency may add pages and change the plot line. *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 723 (2022) (cleaned up). Courts must presume that "Congress intends to make major policy decisions [e.g., whether to prohibit cameras in public hallways] itself, not leave those decisions to agencies." *Id.* (citation omitted). Given separation

of powers principles, this Court should be "reluctant to read into ambiguous statutory text the delegation claimed to be lurking there." *Id.* (cleaned up). Under the major questions doctrine, DHS/GSA must point to clear congressional authorization" for the power it claims. *Id.*

Given separation of powers concerns, West's challenge to agency authority should be approached thoughtfully given the "more aggressive nondelegation doctrine" that portends further restrictions on agency actions. Richard L. Revesz, *The Evolution of Regulatory Review*, 77 Admin. L. Rev. 131, 152 (2025). As Justice Thomas has noted, "[a]t least five Justices have already expressed an interest in reconsidering [the] Court's approach to Congress's delegations of legislative power." *Id.* at 152 & n.130 (quoting *Allstates Refractory Contractors v. Su*, 630 U.S. ----, 144 S. Ct. 2490, 2491 (2024) (Thomas, J., dissenting).

Of course, the non-delegation doctrine holds that "Congress generally cannot delegate its legislative power to another Branch." *Mistretta v. United States*, 488 U.S. 361, 372 (1989). At the same time, even a properly delegated power can be stretched beyond congressional limit when, as here, an agency acts beyond the power delegated. *See Biden v. Nebraska*,

600 U.S. 477, 495 (2023) (discussing how a power delegated to the executive branch "has limits").

*Biden v. Nebraska*, is instructive here. There, the question was not whether something should be done about student loan debt. The question was "who has the authority to do it." *Id.* at 501. Despite a broad enabling statute, the Supreme Court cabined the executive branch's overreach. At issue was the HEROES Act, which authorizes the Secretary to "waive or modify any statutory or regulatory provision applicable to the student financial assistance programs under title IV of the [Education Act] as the Secretary deems necessary in connection with a war or other military operation or national emergency." 20 U.S.C. § 1098bb(a)(1). *Biden v. Nebraska*, 600 U.S. at 494.

Similarly, the Supreme Court cabined administrative agency authority in *West Virginia v. EPA* 597 U. S. 697 (2022). That case involved the EPA's claim that the Clean Air Act authorized it to impose a nationwide cap on carbon dioxide emissions. Given "the 'history and the breadth of the authority that [the agency] ha[d] asserted,' and the 'economic and political significance' of that assertion," [the Supreme Court] found that

there was "'reason to hesitate before concluding that Congress' meant to confer such authority." *Id.* at 721 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159-60 (2000); first alteration in original).

"The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta*, 488 U.S. at 371. Whereas the "executive power shall be vested in a President," U.S. CONST. art. II, § 1, and the judicial power "in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish," U.S. CONST. art. III, § 1, all "legislative Powers herein granted shall be vested in a Congress of the United States," U.S. CONST. art. I, § 1. The question in a delegation challenge is: "whether the statute has delegated legislative power to the agency." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001).

Clearly established Supreme Court precedent proscribes that Congress "may not transfer to another branch 'powers which are strictly and exclusively legislative.'" *Gundy*, 588 U.S. at 135 (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42–43 (1825)). With defined limits, Congress may vest discretion in executive officers "to make public regulations

interpreting a statute and directing the details of its execution ....” *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 406 (1928). But for such delegation to pass constitutional muster, Congress must have clearly delineated “[1] the general policy, [2] the public agency which is to apply it, and [3] the boundaries of this delegated authority.’” *Mistretta*, 488 U.S. at 372–73 (quoting *Am. Power & Light Co. v. Sec. & Exch. Comm’n*, 329 U.S. 90, 105 (1946)).

That is, this Court asks: “whether Congress has supplied an intelligible principle to guide the delegee’s use of discretion.” *Gundy*, 588 U.S. at 135. To answer that question, courts first must “constru[e] the challenged statute to figure out what task it delegates and what instructions it provides.” *Id.* at 136.

Here, the challenged statute and regulations run afoul of the nondelegation doctrine because the statute that DHS/GSA relied on to promulgate them, 40 U.S.C. § 1315, contains no such intelligible principle. And § 1315 does not mention, and there is no indication Congress contemplated, that § 1315 would result in suppressing the First Amendment right to take a mundane video from public hallways in a federally leased

space and posting it on YouTube, especially where the regulations carry a sanction of up to 30 days in jail.

"When the Supreme Court handed down *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), it announced a sea change in how federal courts must treat the Executive Branch's interpretation of the law." *Lopez v. Bondi*, 151 F.4th 1196, 1197 (9th Cir. 2025) (Bumatay, J., dissenting from the denial of rehearing en banc). After *Loper Bright*, courts must independently interpret statutes and must not defer to an executive agency's legal interpretations." *Id.* (citing *Loper Bright*, 603 U.S. at 412-13). In short, deference under *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984), is dead.

Notably, "unlike judges, executive agencies are self-interested litigants like any other with incentives to press a reading of the law favorable to them or advantageous to their policy preferences." *Lopez v. Bondi*, 151 F.4th at 1197 (Bumatay, J., dissenting from the denial of rehearing en banc).

Thus, "courts need not and under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright*, 603 U.S. at 413.

"If the separation of powers means anything, it must mean that the prosecutor isn't allowed to define the crimes he gets to enforce." *United States v. Nichols*, 784 F.3d 666, 670 (10th Cir. 2015) (Gorsuch, J., dissenting from denial of rehearing en banc). But, here, they did just that.

Here, the regulations under which West was charged purport to be promulgated pursuant to 40 U.S.C. § 1315(c), in which Congress delegated to GSA/DHS authority to promulgate regulations for the protection and administration of federal property and to impose "reasonable" sanctions of up to thirty days in jail for violations of the regulations. The delegated authority was unconstitutional, and charges based on that authority must be dismissed.

### D. The separation of powers doctrine protects against the concentration of power within one branch of government by limiting delegation of legislative authority to executive agencies.

Article I of the Constitution vests all legislative powers in the Congress. U.S. CONST. art. I, § 1. From this language, the Supreme Court has

derived the nondelegation doctrine: that Congress may not constitutionally delegate its legislative power to another branch of Government. *Touby v. United States*, 500 U.S. 160, 165 (1991). This nondelegation doctrine is "rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta*, 488 U.S. at 371. The separation of powers prevents the aggrandizement of power within any single branch. *See I.N.S. v. Chadha*, 462 U.S. 919, 998 (1983) (noting "the purpose of separating the authority of government is to prevent unnecessary and dangerous concentration of power in one branch").

The power to create codes of criminal liability that may involve imprisonment is a power that infringes on the core liberty concerns underpinning the separation of powers.[100] Allowing Congress to delegate criminal rule making powers to executive agencies risks great tyranny where the executive can declare what is criminally prohibited and wield the

[100] *See generally* Rachel E. Barkow, *Separation of Powers and the Criminal Law*, 58 STAN. L. REV. 989, 995 (2006) (advocating for a strict separation of powers in the criminal context because "[t]he state poses no greater threat to individual liberty than when it proceeds in a criminal action … [where] the state assumes the power to remove liberty and even life").

power to enforce that criminal prohibition. Because the executive branch has no constitutional authority to enact criminal laws, more stringent requirements should limit delegation to ensure criminal regulations are limited to implementing the will of the legislature.

The Supreme Court has long been appropriately concerned about Congress delegating criminal rulemaking authority to the executive branch. *See, e.g., Gundy*, 588 U.S. at 179 (Gorsuch, J., dissenting) ("[W]hile Congress can enlist considerable assistance from the executive branch in filling up details and finding facts, it may never hand off to the nation's chief prosecutor the power to write his own criminal code. That "is delegation running riot.") (quoting *A. L .A. Schechter Poultry*, 295 U.S. 495, 553 (1935) (Cardozo, J., concurring))); *Nat'l Cable Television Ass'n v. United States*, 415 U.S. 352, 352–53 (1974) (Marshall, J., concurring in part) ("The notion that the Constitution narrowly confines the power of Congress to delegate authority to administrative agencies, which was briefly in vogue in the 1930's, has been virtually abandoned by the Court for all practical purposes, at least in the absence of a delegation creating

'the danger of overbroad, unauthorized, and arbitrary application of criminal sanctions in an area of [constitutionally] protected freedoms.'" (quoting *United States v. Robel*, 389 U.S. 258, 272 (1967) (Brennan, J., concurring))); *United States v. Sharpnack*, 355 U.S. 286, 297–98 (1958) (Douglas, J., dissenting) ("The power to make laws under which men are punished for crimes calls for as serious a deliberation as the fashioning of rules for the seizure of the industrial plants involved in the Youngstown case. Both call for the exercise of legislative judgment; and I do not see how that requirement can be satisfied by delegating the authority to the President, the Department of the Interior, or, as in this case, to the States.").

Yet in the modern era, Congress "freely delegate[s] the core legislative business of writing criminal offenses to unelected" bureaucrats. *United States v. Baldwin*, 745 F.3d 1027, 1030 (10th Cir. 2014). Depriving citizens of liberty is the greatest power wielded by the federal government and as such must be most carefully protected as a Congressional power.

Despite what *should* be an ultra-rigorous nondelegation doctrine in the criminal context, Congress may seek assistance, "within proper limits," from the other branches of government when legislating. *Touby*, 500 U.S. at 165. That is, broadly worded directives to executive agencies are permissible if they provide sufficient guidance:

> Congress does not violate the Constitution merely because it legislates in broad terms, leaving a certain degree of discretion to executive or judicial actors. So long as Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform, such legislative action is not a forbidden delegation of legislative power."

*Id.* (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)); *see also Mistretta*, 488 U.S. at 372–73 (noting it will be "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority").

When Congress seeks to delegate its power to enact criminal rules, greater specificity in the delegation may be required. *See, e.g.*, *Touby*, 500 U.S. at 166 (questioning but not deciding whether greater specificity in delegation is required in the context of criminal sanctions); *United States*

*v. Amirnazmi*, 645 F.3d 564, 576–77 (3d. Cir. 2011) (upholding a statute that delegated to the President authority to create criminal sanctions for certain exports because the delegation restricted the scope of exports covered, imposed a mens rea requirement, and otherwise "meaningfully constrain[ed]" the President's discretion); *United States v. Dhafir*, 461 F.3d 211, 216–17 (2d. Cir. 2006) (same).

The Tenth Circuit has questioned whether the very regulations at issue here violate the separation of powers doctrine because they were promulgated based on a flawed delegation of authority. *United States v. Baldwin*, 745 F.3d 1027, 1030 (10th Cir. 2014) ("Can Congress so freely delegate the core legislative business of writing criminal offenses to unelected property managers at GSA?") (Gorsuch, J., writing for the majority); *see also Gundy*, 588 U.S. at 153 ("The framers understood, too, that it would frustrate the system of government ordained by the Constitution if Congress could merely announce vague aspirations and then assign others the responsibility of adopting legislation to realize its goals.") (Gorsuch, J., dissenting) (cleaned up). As argued below, the delegation here lacks the specificity required to avoid violation of separation of powers.

### E. The charged regulations are invalid because Congress impermissibly delegated to the executive branch unconstrainted authority to impose criminal penalties.

By statute, Congress authorized GSA/DHS to establish regulations with criminal penalties relating to protection of federally owned or occupied property. 40 U.S.C. § 1315(c) (formerly found at 40 U.S.C. §§ 318(a) and 318(c)). The title of the statute is "Law enforcement authority of Secretary of Homeland Security for protection of public property." *Id.* The delegated authority reads in full:

> (c) REGULATIONS.—
>
> (1) IN GENERAL.—The Secretary, in consultation with the Administrator of General Services, may prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property. The regulations may include reasonable penalties, within the limits prescribed in paragraph (2), for violations of the regulations. The regulations shall be posted and remain posted in a conspicuous place on the property.
>
> (2) PENALTIES.—A person violating a regulation prescribed under this subsection shall be fined under title 18, United States Code, imprisoned for not more than 30 days, or both

40 U.S.C. § 1315(c).

The regulations under which West is charged, 41 C.F.R. §§ 102-74.385 and 102-74.420, were promulgated pursuant to this statutory authority. *See, e.g.*, *Baldwin*, 745 F.3d at 1030 (tracing "congressional pedigree" of § 102-74.385). They are criminal offenses that carry the potential for 30 days in jail. 41 C.F.R. § 102-74.450. Congress's delegation of this rule-making authority to the Executive Branch violated the Constitution because the delegation lacked specificity and failed to provide an intelligible principle to guide and constrain GSA/DHS's exercise of legislative power. Authorizing an agency to promulgate criminal regulations for the "protection and administration" of property and persons, without more, invites abuse of power. *Cf. Nichols*, 784 F.3d at 673 ("[T]he framers' attention to the separation of powers was driven by a particular concern about individual liberty and even more especially by a fear of endowing one set of hands with the power to create and enforce criminal sanctions.") (Gorsuch, J., dissenting). There is no limit on the scope of actions on federal property that can be regulated under this delegation, no required mens rea for any violation, and no requirement for consultation

with Congress.[101] Thus, § 1315(c) violates the non-delegation doctrine because it fails to establish meaningful constraints on the Executive's discretion.

As an example of a delegation of criminal rule-making authority that passes constitutional muster, consider 21 U.S.C. § 201(h), the statute at issue in *Touby v. United States*. Congress delegated to the Attorney General the authority to temporarily place drugs on the controlled substances schedule — thereby creating criminal offenses for possession of these substances — if doing so is "necessary to avoid an imminent hazard to public safety." *Touby*, 500 U.S. at 160-61 (citing statutory delegation). This direction from Congress, standing alone provides a limiting principle absent from the delegation provided to DHS for the GSA regulations at issue in this case. But Congress also required that, before scheduling a drug, the Attorney General must consider "the drug's 'history and current pattern of abuse'; '[t]he scope, duration, and significance of abuse';

---

[101] Indeed, the regulations promulgated pursuant to § 1315(c) cover a broad scope of activity — breastfeeding, conducting a lottery or pool, soliciting alms — that might not be expected under a Congressional delegation to protect an administration of federal property. 41 C.F.R. §§ 102-74.426, 102-74.395, 102-74.410.

and '[w]hat, if any, risk there is to the public health.'" *Id.* In addition, Congress required the Attorney General to consider numerous other specified factors and criteria for scheduling drugs and defining criminal conduct. *Id.* Given the specific directives that guided and narrowed the delegation of criminal regulatory authority, the Supreme Court found that § 201(h) did not violate the nondelegation doctrine or separation of powers. *Touby*, 500 U.S. at 166 (finding that "§ 201(h) meaningfully constrains the Attorney General's discretion to define criminal conduct").

Justice Gorsuch — then a judge — has distilled from *Touby* three limiting principles for congressional delegation of criminal authority:

> (1) Congress must set forth a clear and generally applicable rule (unauthorized persons may not possess the drug) that (2) hinges on a factual determination by the Executive (does the drug pose an imminent hazard?) and (3) the statute provides criteria the Executive must employ when making its finding (does the drug in question currently have an accepted medical use?).

*Nichols*, 784 F.3d at 673 (Gorsuch, J., dissenting). These "three criteria could easily be applied to most any delegation challenge in the criminal context." *Id.* (Gorsuch, J., dissenting). Congress' delegation of authority to GSA/DHS that resulted in the challenged regulations in this case falls

far short of the specificity required by *Touby*. The delegation can be construed to set out a goal in the broadest sense of the term (i.e., the protection and administration of federally owned or occupied property and persons thereon), but offered no rule or limiting principle to guide the conferred discretion. The delegation requires no fact-finding and suggests no criteria that the Executive must use.

Although some courts have rejected nondelegation challenges to the statute at issue here, none of the opinions are binding or well-reasoned. *See, e.g.*, *United States v. Moriello*, 980 F.3d 924, 933 (4th Cir. 2020); *United States v. Mumford*, No. 3:17-CR-0008-JCC, 2017 WL 652449, at *3 (D. Or. Feb. 16, 2017). This Court also recently rejected a nondelegation challenge to a similar statute authorizing the Bureau of Land Management to "issue regulations necessary to implement the provisions of [the Federal Land Policy and Management Act (FLPMA)] with respect to the management, use, and protection of the public lands, including the property located thereon." *Pheasant*, 129 F.4th at 580. However, in *Pheasant*, this Court found far greater guidance in that statutory scheme

than is present here, noting that the FLPMA required regulations to advance the goals of "multiple use and sustained yield." *Id.* (quoting 43 U.S.C. § 1732(a)). There is no similar principle in § 1315(c) beyond the general protection and administration of federal property. Moreover, *Pheasant* dealt with public lands while this case concerns leased office space.

The principle that Congress may not delegate legislative power to the President is "universally recognized as vital to the integrity and maintenance of the system of government ordained by the Constitution." *Marshall Field & Co. v. Clark*, 143 U.S. 649, 692 (1892); *see also Amirnazmi*, 645 F.3d at 574 (quoting this principle). Although cumbersome, the separation of powers serves important goals:

> Without a doubt, the framers' concerns about the delegation of legislative power had a great deal to do with the criminal law. The framers worried that placing the power to legislate, prosecute, and jail in the hands of the Executive would invite the sort of tyranny they experienced at the hands of a whimsical king. Their endorsement of the separation of powers was predicated on the view that [t]he inefficiency associated with [it] serves a valuable liberty-preserving function, and, in the context of

> criminal law, no other mechanism provides a substitute.

*Nichols*, 784 F.3d at 670 (Gorsuch, J., dissenting) (cleaned up); *see also Learning Resources v. Trump*, 607 U.S. __, 146 S.Ct. 628, 660 (2026) ("Our cases hold a clear statement is required to support a claim to an extraordinary delegated power. [The Supreme Court] require[s] Congress to speak clearly.") (Gorsuch, J., concurring) (cleaned up). The delegation resulting in the criminal regulations in this case failed to provide the guidance and limits on executive discretion required by the Supreme Court in *Touby*. This Court should find the regulations unconstitutional, vacate West's convictions, and order the charges dismissed.

## II. The district court concluded correctly that the magistrate judge erroneously admitted West's 2022 judgment of conviction for failure to appear because that conviction was not relevant to any permissible purpose under Rule 404(b). But the district court erred in finding that wrongful admission harmless where prejudice is presumed.

The magistrate judge erred in admitting a prior state court conviction from October 2022 for failure to appear on a citation.[102] As part of the conviction documents, the prosecutor introduced evidence of West's

[102] ER-57; ER-77.

expired probation condition, which prohibited West from possessing cameras or recording devices "at any police department or municipal city hall building."[103]

West challenged the admission of that evidence under Rule 404(b). The district court judge found "that his prior conviction was of little relevance but conclude[d] that its admission was harmless."[104]

The government argued that the probation condition was admissible to show West knew that government authorities impose such restrictions on government property and that West's violation was knowing and willful.[105]

But the district court correctly ruled:

> The charged conduct in this case took place after his probation had expired, in a different building, in a different city, owned by a different government. Moreover, the regulations [West] was charged with violating in this case apply to any person visiting the Social Security office, rather than being imposed on an individual as a condition of probation.[106]

---

[103] ER-60; ER-151.
[104] ER-9.
[105] ECF 57 at 10.
[106] ER-10.

In closing argument, the prosecutor had specifically invoked the 404(b) evidence:

> And finally, the evidence shows that [West] was on notice before he came into the Social Security Hearings Office on January 26, 2024, because of the order that he had received from a judge as part of a probation condition that we discussed earlier today pretrial. Being told by the judge as part of a probation condition that you cannot record on state government property puts the defendant on notice that he may be subject to the same restrictions on other types of federal property.[107]

Despite the prosecutor's emphatic reliance on the 404(b) evidence, the district court found that introducing the prior conviction was harmless error.[108]

But the error is "not harmless unless it is more probable than not that the erroneous admission of the evidence did not affect the jury's verdict." *United States v. Charley*, 1 F.4th 637, 651 (9th Cir. 2021) (cleaned up). And this Court "must start with a presumption of prejudice as to the effect of other acts evidence…." *Id.* (cleaned up).

---

[107] ER-130.
[108] ER-10, 18.

Here, the district court erred in finding the presumption rebutted merely because the conviction was (1) received in evidence right after closing argument at the short bench trial, and (2) used by the government in closing argument (rather than during trial) to show West's conduct was knowing and willful.[109]

Evidence presenting even a "modest likelihood of unfair prejudice" is "high enough to outweigh the … probative value" of marginally relevant evidence. *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098–99 (9th Cir. 2005). The danger of unfair prejudice remains relevant in a bench trial even though the risk is less pronounced. *See, e.g., Kaimi v. Hawaii Dep't of Public Safety*, 689 F. App'x 520 (9th Cir. 2017) (evaluating the question of unfair prejudice under FRE 403 in a bench trial appeal); *United States v. Niebla-Torres*, 678 F. App'x 487, 490 (9th Cir. 2017) (evaluating danger of unfair prejudice, but acknowledging that it was a bench trial and "judges are less likely than juries . . . to conclude, based on a defendant's prior bad acts, that he or she is guilty of the charged crime."); *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir.

[109] ER-10–11.

1994) (prejudice from the admission of irrelevant evidence at a bench trial is less likely than with a jury trial).

The district court erred in finding that, because the 404(b) evidence was introduced and referred to only during the government's closing, the introduction of the evidence "did not materially affect the verdict."[110] Contrary to the court's findings, the 404(b) evidence introduced during closing carries more prejudicial weight, not less. *See, e.g.*, *United States v. Sanchez*, 659 F.3d 1252, 1259 (9th Cir. 2011) (citing *United States v. Carter*, 236 F.3d 777, 788 (6th Cir. 2001)) (finding a prosecutor's statement to the jury to "send a memo" and convict the client during closing was especially prejudicial because of when it was brought up); *see also United States v. Lugo*, 613 Fed. App'x 581 (2015) (finding that the government's insinuations about the defendant being a repeat offender were prejudicial, especially because the statements were made in closing).

The district court also found the prejudicial effect was weakened because "the conviction … appear[ed] to have only been used to prove" the undisputed fact that West knew there "may be rules about recording

[110] ER-11.

at the Social Security Office[.]”[111] But the 404(b) evidence was introduced to prove that West was on notice which, in the prosecution’s own words, “is required to prove knowledge and willfulness,”[112] the very issue at dispute.[113] Because the 404(b) evidence was offered to prove notice and intent, it was not offered to prove a conceded point especially given the evidence at trial showing that West questioned the conflicting language on signs. Therefore, because of the prejudicial nature of the irrelevant evidence, its introduction was both erroneous and prejudicial.

This Court should find prejudice presumed (not rebutted), reverse for the Rule 404(b) error and remand for a new trial.

## III. The evidence at trial was insufficient to establish West’s guilt beyond a reasonable doubt.

Viewing the evidence in the light most favorable to the prosecution, the undisputed evidence was insufficient to support West’s three convictions. First, the evidence did not establish that West knowingly and will-

[111] ER-10–11.
[112] ER-74; ER-88.
[113] ECF 57 at 10; ER-130.

fully failed to comply with a lawful directive issued by Carpenter for purposes § 102-74.385. Second, the government did not prove that West knowingly and willfully failed to comply with any posted sign for purposes of § 102-74.385, given that the SSA manager agreed West could continue recording in hallways, just not in the reception area. Third, for purposes of § 102-74.420, the government did not establish either that West filmed in violation of any officially promulgated rule or regulation, nor did the government establish that West filmed in a location he knew was not one of the permissible areas covered by subsection (c) of that regulation.

### A. The evidence was insufficient to prove that West violated 41 C.F.R. § 102-74.385 by knowingly and willfully failing to follow a lawful directive from Federal Protective Services (FPS) Officer Carpenter (Citation 9088789).

When a violation of 41 C.F.R. § 102-74.385 is based on a defendant's alleged failure to comply with a lawful direction, "the government must prove, among other elements, that the defendant received a lawful direction from an FPS officer or other authorized individual and failed to comply with that order." *United States v. Cruscial*, No. 3:18-cr-00465-JR,

2019 WL 1087150, at *6 (D. Or. March 7, 2019). Here, the government proceeded to trial on Citation 9088789, which alleged that West failed to obey a lawful order given by FPS Officer Carpenter.[114]

In *United States v. Huizar*, 762 F. App'x 391, 392 (9th Cir. 2019), this Court identified various qualities that "basic principles of due process likely require" for a "lawful direction" to form the basis of a criminal prosecution. Specifically, *Huizar* explained that in each case where a conviction for violating § 102-74.385 or an analogous regulation was upheld, [1] "officers gave defendants an unambiguous command (often multiple times); [2] officers ensured that the command was understood; [3] officers communicated that defendants would be arrested for failing to comply with the order; and [4] defendants were given a reasonable opportunity to comply." *Id.* at 392. This Court reversed Huizar's conviction because the direction he was given — stating, "it's time for you to leave" — "lacked these necessary elements" and was therefore "insufficient to sustain a conviction for violating § 102-74.385." *Id.*

[114] ER-22 ("The order from Protective Service Officer Carpenter is the one we're proceeding on.").

In *United States v. Kittel*, this Court applied the *Huizar* factors to conclude "Kittel knowingly and willingly failed to comply with a lawful directive from an authorized individual." *United States v. Kittel*, No. 6:19-CR-00240-MK, 2021 WL 3823185, at *9 (D. Or. Aug. 26, 2021). Kittel received clear and repetitive orders to not leave, including multiple unambiguous warnings from two individuals that he was being detained and was not allowed to leave, and Kittel's statements showed he understood why he was being detained and that if he left, he would be committing a crime. *Id.*

Similarly, this Court's cases cited in *Huizar* illustrate the type of evidence necessary to prove a defendant's willful violation of a lawful directive. In *United States v. Bichsel*, 395 F.3d 1053 (9th Cir. 2005), for example, this Court upheld Bichsel's conviction for violating § 102-74.385 after Bichsel refused to unchain himself from the federal courthouse door despite being directed to do so at least three times over the course of four to five minutes and being explicitly warned that failure to do so would result in his arrest. *Id.* at 1054, 1057. And in *United States v. Poocha*, 259 F.3d 1077 (9th Cir. 2001), this Court upheld Poocha's conviction for

failure to obey a lawful order under 36 C.F.R. § 2.32(a)(2) after a National Park Service Ranger ordered him to leave at least twice and then a second ranger told him that he would be arrested if he did not leave the scene. *Id*. at 1079, 1083. Although this Court described this evidence as "far from overwhelming," this Court deemed it sufficient to uphold Poocha's conviction. *Id.* at 1083.

In contrast to *Kittel*, *Bichsel*, and *Poocha*, and just as in *Huizar*, the necessary elements of a lawful order were not established here, because the undisputed evidence as recorded on video establishes that Carpenter's statements to West did not have the necessary qualities identified in *Huizar* to qualify as a lawful direction under § 102-74.385.

First, Carpenter did not issue an "unambiguous command." In fact, he never directed West to take any action or refrain from any action, such as to (1) stop recording, (2) turn off his phone, or (3) leave the building. The district court found that pointing at a sign was, "a clear directive to stop recording."[115] But Carpenter only advised West as to his understanding that the facility did not "allow" recording based on posted

[115] ER-12.

signs.[116] Carpenter's statements suggested that some other rule prohibited recording, not that West was required to comply with Carpenter's own command to cease.

And even if Carpenter's statements could be reasonably construed as commands, their scope was *ambiguous* based on the greater context of the conversation. When West asked about the sign in the hallway that allowed recording in lobbies, foyers, and corridors, Carpenter never told West that he was not in one of the listed areas or to stop recording *regardless* of that rule. Instead, Carpenter appeared to be grappling himself with whether § 102-74.420 allowed recording, and he told West that another employee would get a supervisor.[117] When Witt later appeared, she *agreed* that West was allowed to record in the hallway, and she only debated whether the exception for a "lobby" applied to the reception area. Notably, West did not re-enter the reception area after Witt explained her understanding of the rule to him, confirming his intent to comply

[116] *See, e.g.*, Ex. 5 at 00:37 ("So in this facility we don't allow recording."); 01:16 ([U]nfortunately, you're just not allowed to do any recording."); ER-103–04.

[117] Ex. 5 at 01:53-02:12.

with the rules as they were explained to him. Thus, the district court's contrary conclusion is unsupported.[118]

Second, Carpenter admitted at trial, and the video confirms that he never told West that he could be arrested for failing to stop recording. This contrasts sharply with the explicit warnings provided in *Kittel*, *Bichsel*, and *Poocha*. Yet, the district court erroneously concludes that pointing at a sign sufficed.[119] Far from warning West that he must cease recording or risk being arrested, Witt gave West a choice to either continue recording and have his hearing delayed or to turn off his phone and stop recording. Thus, the only potential "punishment" discussed was a postponement of West's hearing, presumably because he was allowed to film only in the hallway, but not in the interior of the hearings office. Neither Witt nor Carpenter told West that he needed to comply with a specific command or face arrest or citation.[120]

---

[118] *See* ER-6–7.

[119] ER-13 ("the posted regulations that they reviewed together did refer to potential criminal penalties").

[120] ER-103, 119.

Third, to the extent West's conviction is premised on his initial recording in the reception area, he was not given a reasonable opportunity to understand and comply with any directive issued to him. Within sixty seconds after Carpenter initially told West that posted signs prohibited recording, he and West exited the reception area to review the regulations in the hallway. Although West returned to the reception area while waiting for the supervisor, apparently to determine the correct rule, no one had yet told him that the reception area was not a "lobby" at that point. It was only after Witt explained the prohibition on recording in the reception area that West had a reasonable opportunity to understand and comply, which he did.

The district court opinion does not dispute the fact that West only "briefly" returned to the reception area. Instead, the district court ignores the brevity by noting that West pointed his phone's camera at the narrow window on the door of the active SSA hearing.[121]

For the same reasons that Carpenter's statements do not meet the *Huizar* factors for a lawful order, the evidence was insufficient to prove

[121] ER-6, 13, 15.

that West disobeyed the order knowingly and willfully. "To prove that a defendant acted unlawfully, willingly, and knowingly under § 102-74.385, the government must show that the defendant had actual notice of the order … [and] [a]ctual notice requires the defendant to understand what specific conduct is prohibited." *Kittel*, 2021 WL 3823185, at *9. The Court in *Kittel* applied the *Huizar* factors to conclude that the defendant had adequate notice and violated an order knowingly and willfully because the order not to leave was issued repeatedly, unambiguously, with a warning of potential arrest, and the defendant expressed a clear understanding of it. *Id.*

Here, the undisputed evidence at trial showed that West continuously asked for clarification regarding what laws and rules applied. Indeed, he left the reception area after Carpenter's initial advice that recording was not allowed to determine whether another posted sign meant that he could record in hallways and lobbies. Once he was told that he *could* record in the hallway, but not the reception area, he never entered the reception area again. Further, West was never told that he would be

cited or arrested for continuing to record but rather was given a choice to either stop recording or have his hearing delayed.

Under these circumstances, the evidence viewed in the light most favorable to the government was insufficient to show that West knowingly and willfully disobeyed a lawful order. This Court should reverse the district court's contrary conclusion.

### B. The evidence was insufficient to prove that West violated 41 C.F.R. § 102-74.385 by knowingly and willfully failing to comply with a posted sign (Citation 9088788).

Just as when a violation of 41 C.F.R. § 102-74.385 is based on a defendant's failure to comply with a lawful order, a violation based on defendant's alleged failure to comply with "an official sign of a prohibitory, regulatory, or directory nature" also requires the government to prove that the defendant "acted unlawfully, knowingly, and willfully." *United States v. Estrada-Iglesias*, 425 F. Supp. 3d 1265, 1270 (D. Nev. Dec. 2, 2019).[122]

In the criminal context, willfulness requires an action "undertaken with a bad purpose," and "with knowledge that [the defendant's] act is

[122] ER-145–46.

unlawful." *Bryan v. United States*, 524 U.S. 184, 191–92 (1998); *accord United States v. Singh*, 979 F.3d 697, 712 (9th Cir. 2020). In *Singh*, this Court approved a jury instruction that stated:

> An act is done willfully if the defendant acted with knowledge that some part of his course of conduct was unlawful and with the intent to do something the law forbids, and again not by mistake or accident. In other words, a person acts "willfully" when he acts with a bad purpose to disobey or disregard the law.

*Id.* at 712-13. Willfulness is equated with "purposeful" or "intentional" misconduct. *United States v. Bibbins*, 637 F.3d 1087, 1091 n.3 (9th Cir. 2011). "Knowingly" simply requires proof of knowledge of "the facts that make [a defendant's] conduct fit the definition of the offense," *Staples v. United States*, 511 U.S. 600, 608, n.3 (1994). Proving a defendant acted knowingly does not require that the government show he knew at the time that his conduct was illegal, but it often requires a showing that the defendant had "knowledge of the facts that *made* the [conduct] … unauthorized." *Elonis v. United States*, 575 U.S. 723, 736 (2015) (emphasis added).

Here, the government failed to prove West disobeyed an official, prohibitory sign knowingly and willfully. The government proceeded on

the theory that West failed to comply with the sign depicted in Exhibit 3, which stated, "Federal law and SSA policy prohibits taking pictures or video inside SSA offices without the expressed written consent of an authorized official of the agency."[123] The government argued that West's knowledge of the sign had been proven because he "pointed to the signs, discussed them with people in the office, and … filmed them at length before he left the office."[124] But while it is undisputed that West *saw* the sign shown in Exhibit 3, the evidence did not establish that West *understood* that the sign prohibited recording in the specific locations at issue, nor that he disobeyed the sign purposefully, "with the intent to do something the law forbids." *Singh*, 979 F.3d at 712.

In fact, Witt's testimony and the video footage show that West believed his conduct was lawful. On direct examination, Witt testified that, after initially requesting that he stop recording, West "requested to show me one of the signs near the elevator bank" because he believed it "gave him permission" to record.[125] She testified that after she "pointed to the

[123] ER-94, 96; ER-53.
[124] ER-128.
[125] ER-111.

sign inside the reception area," West told her "he believed the federal law posted outside the reception area conflicted with that[.]"[126] In the video footage, West repeatedly asserted his belief that a separate posted regulation, 41 C.F.R. § 102-74.420(c), permitted photography if it took place in "[b]uilding entrances, lobbies, foyers, corridors or auditoriums for news purposes."[127]

Although both Carpenter and Witt brought West's attention to the no recording sign shown in Exhibit 3, no staff member contradicted West when he pointed to § 102-74.420(c) as proof that he was allowed to record in the listed areas. On the contrary, Witt *confirmed* West's belief and only disagreed with him about which specific locations were allowed. In her testimony, she agreed that she "told the defendant he could record in the hallway but not our reception area."[128] Although she asserted at trial that this was a misstatement and "really he should have been prohibited from filming anywhere,"[129] the later trial testimony does not change

---

[126] ER-118.
[127] *See, e.g.*, Ex. 5 at 1:16, 1:26, 2:12, 3:55, 4:54.
[128] ER-114.
[129] ER-114.

what West was told at the time. And West's conduct throughout is consistent with an intent to abide by his understanding of § 102-74.420(c): he only recorded from areas he believed were lobbies or corridors, and when Witt told him the reception area was not a lobby, West never again entered that area.

Because West was not told that his understanding of the signs was incorrect except regarding the characterization of the reception area, and because he made every effort to comply with the signs as clarified by Witt, no reasonable factfinder could conclude that West purposefully disobeyed the official, prohibitory signs.

### C. The evidence was insufficient to prove that West violated 41 C.F.R. § 102-74.420 because there was no evidence that any federal rule prohibited video recording and because West only recorded in areas that he believed were corridors or lobbies (Citation 9088792).

The evidence was likewise insufficient to prove that West violated 41 C.F.R. § 102-74.420. The parties agreed pre-trial that the government was required to prove *either* that "[s]ecurity regulations, rules, orders, or directives" prohibited photography on the federal property, *or* that West

took photographs other than in one of the three ways authorized in subsections (a), (b), or (c) of the regulation.[130] Here, the government argued that it had proven West's guilt under both prongs, but the record contains insufficient evidence to convict West under either prong.

First, the government argued: "Evidence shows that there were federal rules in place prohibiting video recording, and the defendant recorded despite those rules."[131] But the only evidence about a "rule" was that there were posted signs prohibiting recording. And the only officially promulgated rule or regulation cited in any of those signs was 41 C.F.R. § 102-74.420, the very regulation charged.[132] That regulation *allows* recording in certain circumstances. It would be circular for a regulation to prohibit recording when "[s]ecurity regulations, rules, orders, or directives" prohibit it, and then have that same regulation be the rule that prohibits recording.[133]

---

[130] ER-146.

[131] ER-131.

[132] ER-54.

[133] If the conviction under 41 C.F.R. § 102-74.420 is based simply on a defendant's failure to comply with a posted sign, without an underlying,

Second, the government argued that West's conduct did not fit within § 102-74.420(c) because the SSA's reception area was not a lobby, asserting that a lobby must be an area where government business is not conducted.[134] But the evidence did not establish that West knew the reception area was not a lobby until Witt told him. The video shows that West willingly left the reception area and did not return after Witt explained that the area was not a lobby. In other words, the government did not show that West ever filmed in a location that he knew was *not* covered by § 102-74.420(c). *Elonis*, 575 U.S. at 734 ("[T]he general rule is that a guilty mind is a necessary element in the indictment and proof of every crime."). The evidence was therefore insufficient for a reasonable factfinder to convict West of violating 41 C.F.R. § 102-74.420.

---

officially promulgated rule or regulation, then the charge would be unconstitutionally multiplicitous because it would be identical to the charge under § 102-74.385 for failure to obey posted signage. *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (where the same act or transaction constitutes a violation of two or more distinct provisions, the test for determining whether there are two offenses or only one, is whether each provision requires proof of a fact that the other does not); *United States v. Awad*, 551 F.3d 930, 937 (9th Cir. 2009).

[134] ER-131 ("A lobby is not a Social Security office where official business is conducted. A lobby is a passageway, a waiting area where government business is not exchanged.").

## CONCLUSION

Based on the foregoing, this Court should vacate the convictions based on insufficient evidence or based on a violation of the nondelegation doctrine. Alternatively, this Court should reverse and remand because the 404(b) error is presumptively prejudicial.

Respectfully submitted April 20, 2026.

*s/ Kurt David Hermansen*
Kurt David Hermansen
Attorney for Defendant-Appellant

## Statement of Related Cases

I, Kurt David Hermansen, undersigned counsel of record for defendant-appellant, Robert L. West, state under this Court's Rule 28-2.6, that I know of no other cases that should be deemed related.

Dated: April 20, 2026.

*s/ Kurt David Hermansen*
Kurt David Hermansen
Attorney for Defendant-Appellant

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

I am the attorney for appellant Robert L. West.

Appellant's Opening Brief contains **13,521** , including **0** words manually counted in any visual images, and excluding items exempted by FRAP. 32(f). The brief has a type size and typeface that comply with FRAP 32(a)(5) and (6).

I certify that that Appellant's Opening Brief complies with the word limit of Cir. R. 32–1(a) (*i.e.*, 14,000 words).

*s/ Kurt David Hermansen* — April 20, 2026

Kurt David Hermansen
Supervisory Assistant Federal
Public Defender

# ADDENDUM

## U.S. CONST. art. I, § 1

All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives.

## U.S. CONST. art. IV, § 3, cl. 2

The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State.

## 40 U.S.C. § 1315. Law enforcement authority of Secretary of Homeland Security for protection of public property

**(a) In general.**—To the extent provided for by transfers made pursuant to the Homeland Security Act of 2002, the Secretary of Homeland Security (in this section referred to as the "Secretary") shall protect the buildings, grounds, and property that are owned, occupied, or secured by the Federal Government (including any agency, instrumentality, or wholly owned or mixed-ownership corporation thereof) and the persons on the property.

**(b) Officers and agents.**—

**(1) Designation.**—The Secretary may designate employees of the Department of Homeland Security, including employees transferred to the Department from the Office of the Federal Protective Service of the General Services Administration pursuant to the Homeland Security Act of 2002, as officers and agents for duty in connection with the protection of property owned or occupied by the Federal Government and persons on the property, including duty in areas outside the property to the extent necessary to protect the property and persons on the property.

**(2) Powers.**—While engaged in the performance of official duties, an officer or agent designated under this subsection may—

**(A)** enforce Federal laws and regulations for the protection of persons and property;

**(B)** carry firearms;

**(C)** make arrests without a warrant for any offense against the United States committed in the presence of the officer or agent or for any felony cognizable under the laws of the United States if the officer or agent has reasonable grounds to believe that the person to be arrested has committed or is committing a felony;

**(D)** serve warrants and subpoenas issued under the authority of the United States;

**(E)** conduct investigations, on and off the property in question, of offenses that may have been committed against property owned or occupied by the Federal Government or persons on the property; and

**(F)** carry out such other activities for the promotion of homeland security as the Secretary may prescribe.

**(c) Regulations.—**

**(1) In general.**—The Secretary, in consultation with the Administrator of General Services, may prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property. The regulations may include reasonable penalties, within the limits prescribed in paragraph (2), for violations of the regulations. The regulations shall be posted and remain posted in a conspicuous place on the property.

**(2) Penalties.**—A person violating a regulation prescribed under this subsection shall be fined under title 18, United States Code, imprisoned for not more than 30 days, or both.

**(d) Details.—**

**(1) Requests of agencies.**—On the request of the head of a Federal agency having charge or control of property owned or occupied by the Federal Government, the Secretary may detail officers and agents designated under this section for the protection of the property and persons on the property.

**(2) Applicability of regulations.**—The Secretary may—

**(A)** extend to property referred to in paragraph (1) the applicability of regulations prescribed under this section and enforce the regulations as provided in this section; or

**(B)** utilize the authority and regulations of the requesting agency if agreed to in writing by the agencies.

**(3) Facilities and services of other agencies.**—When the Secretary determines it to be economical and in the public interest, the Secretary may utilize the facilities and services of Federal, State, and local law enforcement agencies, with the consent of the agencies.

**(e) Authority outside Federal property.**—For the protection of property owned or occupied by the Federal Government and persons on the property, the Secretary may enter into agreements with Federal agencies and with State and local governments to obtain authority for officers and agents designated under this section to enforce

Federal laws and State and local laws concurrently with other Federal law enforcement officers and with State and local law enforcement officers.

**(f) Secretary and Attorney General approval.**—The powers granted to officers and agents designated under this section shall be exercised in accordance with guidelines approved by the Secretary and the Attorney General.

**(g) Limitation on statutory construction.**—Nothing in this section shall be construed to—

**(1)** preclude or limit the authority of any Federal law enforcement agency; or

**(2)** restrict the authority of the Administrator of General Services to promulgate regulations affecting property under the Administrator's custody and control.

## 41 C.F.R. § 102-74.385 What is the policy concerning conformity with official signs and directions? (Repealed Nov. 5, 2025).

Persons in and on property must at all times comply with official signs of a prohibitory, regulatory or directory nature and with the lawful direction of Federal police officers and other authorized individuals.

## 41 C.F.R. § 102-74.420(c) 41 C.F.R. § 102-74.420 What is the policy concerning photographs for news, advertising or commercial purposes? (Repealed Nov. 5, 2025).

> Except where security regulations, rules, orders, or directives apply or a Federal court order or rule prohibits it, persons entering in or on Federal property may take photographs of—
>
> **(a)** Space occupied by a tenant agency for non-commercial purposes only with the permission of the occupying agency concerned;
>
> **(b)** Space occupied by a tenant agency for commercial purposes only with written permission of an authorized official of the occupying agency concerned; and
>
> **(c)** Building entrances, lobbies, foyers, corridors, or auditoriums for news purposes.

## 6 C.F.R. § 139.15 Definitions: "building manager / property manager / facility manager"

> Building manager/property manager/facility manager means the individual employed by or through contract with a Federal agency that has real property management and operations authority.

## 6 C.F.R. § 139.15 Definitions: "Federal facility"

> Federal facility means a federally owned or leased building, structure, or the land it resides on, in whole or in part, that is regularly occupied

> by Federal employees or Federal contractor workers for nonmilitary activities. The term "Federal facility" also means any building or structure acquired by a contractor through ownership or leasehold interest, in whole or in part, solely for the purpose of executing a nonmilitary Federal mission or function under the direction of an agency. The term "Federal facility" does not include public domain land, including improvements thereon; withdrawn lands; or buildings or facilities outside of the United States.

## 6 C.F.R. § 139.15 Definitions: "Federal Government"

> Federal Government means the United States Government, including any agency, instrumentality, or wholly owned or mixed-ownership corporation thereof.

## 6 C.F.R. § 139.15 Definitions: "federal grounds"

> Federal grounds mean all parts outside a Federal facility (e.g., lands, walkways, and roadways) that are owned, occupied, or secured by the Federal Government.

## 6 C.F.R. § 139.15 Definitions: "federal property"

> Federal property means any facility, grounds, or other property, to include vehicles, equipment, and any movable article, that is owned, occupied, or secured by the Federal Government and under the protection responsibility of the Secretary of Homeland Security.

## 6 C.F.R. § 139.15 Definitions: "image recording"

Image recording means use of any camera, device, material, or equipment to capture an image, including any photograph, sketch, picture, drawing, map, or graphical representation.

## 6 C.F.R. § 139.15 Definitions: "federal tenant"

Federal tenant means a Federal department or agency that occupies space and pays rent on space in any Federal facility under the protection responsibility of the Secretary of Homeland Security.

## 6 C.F.R. § 139.15 Definitions: "Protective Security Officer"

Protective Security Officer means a security guard employed by a private security contractor who provides contract security services to the Federal Protective Service (FPS) The contract security services provided by a Protective Security Officer include, but are not limited to, the performance of security screenings and inspections of persons, personal property, and vehicles entering Federal property; confronting individuals who have violated or are suspected of violating building rules and regulations; and reporting all such security-related information to FPS.

## 6 C.F.R. § 139.15 Definitions: "public area"

Public area means any part or section on Federal property that is ordinarily open to members of the public.

## 6 C.F.R. § 139.15 Definitions: "Secretary"

Secretary means the Secretary of the Department of Homeland Security or any person, officer, or entity within the Department to whom the Secretary's authority under 40 U.S.C. 1315 is delegated.

## 6 C.F.R. § 139.15 Definitions: "secure area"

Secure area means any part or section on Federal property marked by signage where persons present themselves to enter the property and submit to the security inspection and screening process. Security personnel means persons authorized to ensure compliance with this part, including FPS law enforcement officers, protective security officers (PSO), court security officers, or other security personnel charged by the Federal Government with security duties under this part such as other DHS component armed security guards performing similar duties as contract PSOs.

## 6 C.F.R. § 139.30 Conformance with Signs and directions (effective Nov. 5, 2025)

> Any person on Federal property must at all times comply with official signs of a prohibitory, regulatory, or directive nature and with the lawful direction of security personnel.

## 6 C.F.R. § 139.65 Photography and recording (effective Feb. 9, 2026)

> (a) General. Any person on Federal property is prohibited from photographing or creating video, image, or audio recordings of Federal facilities and grounds in contravention of any security regulation, rule, order, or directive, including any Federal Court Order or Rule; or in a manner that impedes or disrupts access to, or operations on, Federal property.
>
> (b) Exceptions. When not prohibited by a security regulation, rule, order, or directive, including any Federal Court Order or Rule, the following activities are allowed:
>
> (1) Any person, including persons affiliated with the media and commercial entities, may photograph or record video, images, and audio of publicly accessible exterior areas of Federal facilities and grounds from public areas, including public streets, sidewalks, parks, and plazas, when not impeding or disrupting access to or operations on the Federal property.

(2) Any person, including persons affiliated with the media and commercial entities, may photograph or record video, images, and audio of publicly accessible interior areas of Federal facilities and grounds from public areas, including public entrances, lobbies, foyers, corridors, or auditoriums, when not impeding or disrupting access to or operations on the Federal property.

(3) Any person, including persons affiliated with the media and commercial entities, may only photograph or record video, images, and audio of interior areas occupied by a Federal tenant with the express permission of the occupying tenant. Persons must obtain written permission in advance from the occupying tenant when photographing or recording tenant-occupied space for a commercial purpose.